S/Ford E. Stinson, Jr.

RECEIVED AND FILED
W. HILFRED H. BRINKLEY
CLERK OF COURT

ANGELA N. BOYETT

Versus

EQUIFAX CREDIT INFORMATION
SERVICES, INC., CSC CREDIT
SERVICES, INC., EXPERIAN
INFORMATION SOLUTIONS, INC.,
SPECIALTY RETAILERS, STAGE
STORES, INC. D/B/A STAGE
DEPARTMENT STORES, MERCURY
FINANCE COMPANY A/K/A MERCURY
FINANCE COMPANY OF LOUISIANA,
LANE BRYANT, WORLD FINANCIAL
NETWORK NATIONAL BANK,
NATIONSBANK, N.A., A/K/A
NCNB CORP., HEILIG-MEYERS
COMPANY, BELLSOUTH MOBILITY,
INC., JEWELERS NATIONAL BANK
A/K/A JEWELERS FINANCIAL
SERVICE, A DIVISION OF ZALES,
GORDON'S JEWELERS, THE CATO
CORPORATION, CRESCENT BANK
& TRUST A/K/A CITY BANK &
TRUST, RITE AID PHARMACY
F/K/A KATZ & BESTHOFF, INC.
A/K/A K&B, INC., HONOR
CREDITORS AGENCY, LOUISIANA
BELLSOUTH, LACK'S NO. 40, INC.
A/K/A LACK'S STORES, INC.,
CREDIT BUREAU OF MONTGOMERY
A/K/A HOLLOWAY CREDIT BUREAU
A/K/A CREDIT BUREAU COLLECTION
DEPARTMENT, and CAPITAL ONE
BANK

NUMBER: 58/50   JAN 27  10 04 AM '99

26TH JUDICIAL DISTRICT COURT

WEBSTER PARISH

WEBSTER PARISH, LOUISIANA

DY. _____

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

MAR 0 1 1999

ROBERT H. SHEMWELL, CLERK
BY_____DEPUTY

CV99-0361 S

MAGISTRATE JUDGE PAYNE

JUDGE STAGG

*JURY DEMANDED*

### *ORIGINAL PETITION FOR DAMAGES AND REQUEST FOR TRIAL BY JURY*

NOW INTO COURT, through undersigned counsel, comes **ANGELA N. BOYETT**, Plaintiff in the above entitled and captioned matter, who respectfully prays for Judgment of this Honorable Court against defendants, jointly, severally and in solido, as follows:

1.

Plaintiff, **ANGELA N. BOYETT**, is a natural person, domiciled in Minden, Webster Parish, Louisiana.

2.

Made Defendants are the following parties:

a) **EQUIFAX CREDIT INFORMATION SERVICES, INC.**, hereinafter referred to as **"ECIS,"** a foreign corporation which, upon information and belief, is authorized to do and doing business in the State of Louisiana;

b) **CSC CREDIT SERVICES, INC.**, hereinafter referred to as **"CSC,"** a foreign corporation which, upon information and belief, is authorized to do and doing business in the State of Louisiana;

A TRUE COPY
ATTEST _____
Deputy Clerk District Court
WEBSTER PARISH, LA.

1

58150 - 1

c)   *EXPERIAN INFORMATION SOLUTIONS, INC.*, hereinafter
     referred to as **"EXPERIAN,"** a foreign corporation which,
     upon information and belief, is authorized to do and
     doing business in the State of Louisiana;

d)   *SPECIALTY RETAILERS*, hereinafter referred to as
     *"SPECIALTY,"* a foreign corporation which, upon
     information and belief, is authorized to do and doing
     business in the State of Louisiana;

e)   *STAGE STORES, INC. D/B/A STAGE DEPARTMENT STORES*,
     hereinafter referred to as *"STAGE,"* a foreign
     corporation which, upon information and belief, is
     authorized to do and doing business in the State of
     Louisiana;

f)   *MERCURY FINANCE COMPANY A/K/A MERCURY FINANCE COMPANY
     OF LOUISIANA*, hereinafter referred to as *"MERCURY,"* a
     foreign corporation which, upon information and belief,
     is authorized to do and doing business in the State of
     Louisiana;

g)   *LANE BRYANT*, hereinafter referred to as **"LANE BRYANT,"**
     a foreign corporation which, upon information and
     belief, is authorized to do and doing business in the
     State of Louisiana;

h)   *WORLD FINANCIAL NETWORK NATIONAL BANK*, hereinafter
     referred to as *"WFNNB,"* a foreign corporation which,
     upon information and belief, is authorized to do and
     doing business in the State of Louisiana;

i)   *NATIONSBANK, N.A. A/K/A NCNB CORP.*, hereinafter
     referred to as *"NATIONSBANK,"* a foreign corporation
     which, upon information and belief, is authorized to do
     and doing business in the State of Louisiana;

j)   *HEILIG-MEYERS COMPANY*, hereinafter referred to as
     *"HMC,"* a foreign corporation which, upon information
     and belief, is authorized to do and doing business in
     the State of Louisiana;

k)   *BELLSOUTH MOBILITY, INC.*, hereinafter referred to as
     *"BELLSOUTH,"* a foreign corporation which, upon
     information and belief, is authorized to do and doing
     business in the State of Louisiana;

l)   *JEWELERS NATIONAL BANK A/K/A JEWELERS FINANCIAL
     SERVICE, A DIVISION OF ZALES*, hereinafter referred to
     as *"JFS,"* a foreign corporation which, upon information
     and belief, is authorized to do and doing business in
     the State of Louisiana;

m)   *GORDON'S JEWELERS*, hereinafter referred to as
     *"GORDON'S,"* a foreign corporation which, upon
     information and belief, is authorized to do and doing
     business in the State of Louisiana;

n)   *THE CATO CORPORATION*, hereinafter referred to as
     *"CATO,"* a foreign corporation which, upon information
     and belief, is authorized to do and doing business in
     the State of Louisiana;

o)   *CRESCENT BANK & TRUST A/K/A CITY BANK & TRUST*,
     hereinafter referred to as *"CRESCENT,"* a foreign
     corporation which, upon information and belief, is
     authorized to do and doing business in the State of
     Louisiana;

58150 - 2

p)   *RITE AID PHARMACY F/K/A KATZ & BESTHOFF, INC. A/K/A
     K&B, INC.*, hereinafter referred to as *"K&B,"* a foreign
     corporation which, upon information and belief, is
     authorized to do and doing business in the State of
     Louisiana;

q)   *HONOR CREDITORS AGENCY*, hereinafter referred to as
     *"HONORS,"* a foreign corporation which, upon information
     and belief, is authorized to do and doing business in
     the State of Louisiana;

r)   *LOUISIANA BELLSOUTH*, hereinafter referred to as *"LA.
     BELLSOUTH,"* a foreign corporation which, upon
     information and belief, is authorized to do and doing
     business in the State of Louisiana;

s)   *LACK'S NO. 40, INC. A/K/A LACK'S STORES, INC.*,
     hereinafter referred to as *"LACK'S,"* a foreign
     corporation which, upon information and belief, is
     authorized to do and doing business in the State of
     Louisiana;

t)   *CREDIT BUREAU OF MONTGOMERY F/K/A HOLLOWAY CREDIT
     BUREAU A/K/A CREDIT BUREAU COLLECTION DEPARTMENT*,
     hereinafter referred to as *"HCB,"* a foreign corporation
     which, upon information and belief, is authorized to do
     and doing business in the State of Louisiana; and

u)   *CAPITAL ONE BANK*, hereinafter referred to as *"CAPITAL
     ONE,"* a foreign corporation which, upon information and
     belief, is authorized to do and doing business in the
     State of Louisiana.

                              3.

All the above listed Defendants may hereinafter be referred
collectively to as "Defendants."

                              4.

Plaintiff, *ANGELA N. BOYETT*, requests a trial by jury.

                              5.

Plaintiff, *ANGELA N. BOYETT*, respectfully requests that this
Honorable Court instruct the jury, as the trier of facts, that in
addition to actual or compensatory damages, punitive or exemplary
damages may be awarded against some or all of the Defendants
under the provisions of the Fair Credit Reporting Act and/or
states' laws.

                              6.

Plaintiff, *ANGELA N. BOYETT*, respectfully requests that this
Honorable Court instruct the jury, as the trier of facts, that in
addition to an award of damages, the costs of litigation and
reasonable attorneys' fees incurred by Plaintiff may be awarded
against some or all of the defendants under the provisions of the
Fair Credit Reporting Act and/or other federal and states' laws.

£9150 - 3

## GENERAL FACTUAL BASIS FOR PETITION

7.

Upon information and belief, prior to *February, 1993*, a *group of defrauders, possibly located in various locations in Alabama, Mississippi, Texas, and Louisiana, unknown and unconnected to plaintiff, hereinafter referred to as the* "*imposter[s]*" *or* "*defrauder[s]*," obtained personal and credit information of plaintiff, **ANGELA N. BOYETT**.

8.

After obtaining plaintiff's personal and credit information, and assuming Plaintiff's identity, the defrauder[s] used the information to make applications for extensions of credit, banking benefits and credit cards/devices, as more fully described herein.

9.

Plaintiff subsequently learned that one or more imposters assumed her identity and committed application fraud through the use of her personal identification data.

10.

Plaintiff contacted and communicated with law enforcement and congressional officials to further assist them and complain of defendants' actions and inactions.

11.

After learning of the fraud, plaintiff called, wrote and communicated with the various defendants but found her efforts were largely ignored by the various duped creditors and credit bureaus.

12.

In August, 1997, plaintiff sought a mortgage from Minden Bank & Trust and learned that her various credit reports continued to contain false and damaging data which had been disputed by plaintiff on a number of occasions.  Plaintiff was unable initially to obtain credit.

13.

Upon information and belief, Minden Bank & Trust accessed

58150 - 4

and secured consumer credit reports from national credit
reporting agencies.  False data, both trade line reportings,
fraud-related inquiries, and personal identification data, and
false credit scores and risk factors/denial codes were generated
and provided by the national credit reporting agencies to Minden
Bank & Trust.  The false reportings caused plaintiff's credit
request to be delayed and caused other pecuniary and non-
pecuniary damages.  Plaintiff was ultimately allowed to borrow
after extensive efforts were made to convince a *second lender,
Minden Building and Loan*, that the derogatory reportings were
fraud-related.

14.

In March, 1998, plaintiff sought a credit card and credit
account from Dillard National Bank a/k/a Dillard's Department
Stores ["Dillard"] and learned that her credit reports prepared
and issued by CSC and Equifax, continued to contain false and
damaging data which had been disputed by plaintiff on a number of
occasions.  Plaintiff was unable to obtain credit.

15.

Dillard accessed and secured consumer credit reports from
the national credit reporting agencies, CSC and Equifax.  False
data, both trade line reportings, fraud-related inquiries, and
personal identification data, and false credit scores and risk
factors/denial codes were generated and provided by the national
credit reporting agencies, CSC and Equifax, to Dillard.  The
false reportings caused plaintiff's credit request to be denied
and caused other pecuniary and non-pecuniary damages.  Dillard's
ultimately approved a higher percentage rate account for a lesser
credit of $400.00, which was different from the credit sought by
plaintiff.

16.

Upon learning of the defrauder's actions, Plaintiff notified
various credit grantors and consumer reporting agencies of the
fraudulent use of her name and credit information and demanded
the removal of the false information from their records and her

58150 - 5

credit reports.

17.

Despite diligent and costly efforts by Plaintiff, her credit reports continued to contain the false and damaging information.

18.

Upon information and belief, Plaintiff's consumer credit reports still contain false and damaging information, previously disputed, connected to the fraud.

19.

Plaintiff has suffered damages due to the tortious and illegal actions or inactions directed at Plaintiff by Defendants, individually and collectively.

### LIABILITY OF ECIS and CSC

20.

In this action, Defendant, *ECIS*, is a *consumer credit reporting agency* as defined in the Fair Credit Reporting Act. 15 USC 1681a.

21.

In this action, Defendant, *CSC*, is a *consumer credit reporting agency* as defined in the Fair Credit Reporting Act. 15 USC 1681a.

22.

In this action, Defendants, *ECIS and CSC*, prepared, issued, assembled, transferred and otherwise reproduced *consumer reports*, regarding Plaintiff, as defined in the Fair Credit Reporting Act. 15 USC 1681a.

23.

*ECIS* maintains a contract with *CSC* wherein they share data and other assets.

24.

*ECIS and CSC* share a common credit reporting database which takes in, warehouses, maintains and manipulates data supplied by their subscribers.

25.

Both *ECIS and CSC* have access to and prepare consumer credit

6

58150 - 6

reports from the same data pool, in the same database, and both have duties to each consumer, about whom they may report, as provided in the Fair Credit Reporting Act.

26.

*CSC* is a large affiliate bureau and agent of *ECIS*. *ECIS* is likewise an agent of *CSC*.

27.

*ECIS*'and *CSC*'s subscribers have repeatedly supplied false, fraud-related data to *ECIS* and *CSC* and attributed said data to plaintiff.

28.

Plaintiff advised *ECIS and CSC*, through its subscribers and *directly*, on multiple occasions, of the false, fraud-related data and demanded that the data be removed from her consumer reports and files.

29.

*ECIS and their agent, CSC,* failed to properly reinvestigate plaintiff's disputes and *ECIS and CSC* continued to prepare and issue false consumer reports.

30.

*CSC, ECIS*, and their various duped creditors-subscribers, exchanged information about plaintiff's disputes and the fraud accounts through their reinvestigation and fraud divisions and *ACIS system*, internal notes and CDV/ACDV/UDF processes.

31.

*CSC, ECIS*, and their various duped creditors-subscribers, were very aware of plaintiff's disputes, as well as their inadequate and illegal reinvestigation, and the subscribers' responses to their contacts and their decision to leave the disputed, false, fraud-related data as attributable to plaintiff.

32.

*ECIS and CSC* took inadequate action to correct plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation. Further, *ECIS and CSC* have continuously mis-merged data into plaintiff's credit files and

7

58150 - 7

consumer credit reports it prepared about plaintiff and published to others.

33.

Likewise they failed to take necessary and reasonable steps to prevent further inaccuracies from entering plaintiff's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by *ECIS and CSC* and relayed for further use, reliance and publication by their subscribers.

34.

Defendants, *ECIS and CSC*, failed to adopt and follow "reasonable procedures" to assure the maximum possible confidentiality, proper utilization and maximum possible accuracy of Plaintiff's consumer credit and other personal information, as required by the Fair Credit Reporting Act, which they compiled, used and manipulated, in order to prepare consumer credit reports, credit scores, risk factors/denial codes and other economic and prediction data evaluations.

35.

Defendants, *ECIS and CSC*, failed to adopt and follow "reasonable procedures" to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting databank, as required by the Fair Credit Reporting Act.

36.

From some unknown date prior to February, 1993, through the present time period, Defendants, *ECIS and CSC*, have continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from the plaintiff and subscribers that such information was inaccurate and fraud-related.

37.

Defendants, *ECIS and CSC*, through their fault, as described herein, caused great and irreparable injury to Plaintiff herein.

8

58150 - 8

38.

Through their actions, inactions and conduct, Defendants have, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

39.

Further, Defendants, by their actions stated above, intentionally inflicted emotional distress on Plaintiff.

40.

Defendants, *ECIS and CSC*, have defamed Plaintiff and invaded her privacy.

41.

Defendants, *ECIS and CSC*, are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages under common law, states' laws and/or for willful violation(s) of the provisions of the Fair Credit Reporting Act.

42.

*CSC and EQUIFAX* also breached their various and multiple agreements and contracts with their various subscribers [whose fraud accounts, inquiries and incoming personal identification data were disputed by plaintiff], by continuously reporting false credit information about plaintiff despite clear information in their files showing incoming fraud-related data associated with the fraud address while a second pool of accurate data, associated with plaintiff's identifiers and true address, was also incoming and present in their records.

43.

Further, by violating the FCRA and using unreasonable procedure for data accuracy and integrity, *CSC and ECIS* likewise breached their contractual duties.

44.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *CSC's and ECIS*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

58150 - 9

45.

Further, on several occasions, *CSC and ECIS* sent
reinvestigation results to plaintiff which evidenced their
decision to merely mimic its subscribers' replies to the
inadequate reinvestigation disputes *CSC and ECIS* conveyed.

46.

Further, *CSC's and ECIS'* reinvestigation results contained
conflicting responses wherein it "verified" certain fraud
accounts, personal identification information, and inquiries and
"deleted" other disputed fraud accounts, personal identification
information, and inquiries.

47.

*CSC and ECIS* suggested that a number of the duped creditors
had "verified" the fraud accounts.

48.

From some unknown date prior to 1998, through the present
time period, Defendants, *CSC and ECIS*, have continually added,
stored, maintained and disseminated personal and credit
information, in consumer reports it prepared and issued, about
the Plaintiff which was inaccurate, false, erroneous and
misleading despite notice by the plaintiff and subscribers that
such information was erroneous.

### *LIABILITY OF EXPERIAN*

49.

In this action, Defendant, *EXPERIAN*, is a *consumer credit
reporting agency* as defined in the Fair Credit Reporting Act. 15
USC 1681a.

50.

In this action, Defendant, *EXPERIAN*, is a *consumer credit
reporting agency* as defined in the Fair Credit Reporting Act. 15
USC 1681a.

51.

In this action, Defendant, *EXPERIAN*, prepared, issued,
assembled, transferred and otherwise reproduced *consumer reports*,
regarding Plaintiff, as defined in the Fair Credit Reporting Act.

58150-10

15 USC 1681a.

52.

EXPERIAN maintains a contract with *Credit Bureau of Greater Shreveport, their affiliate bureau and legal and contractual agent,* wherein they share data and other assets.

53.

EXPERIAN allows their credit reporting database, which takes in, warehouses, maintains and manipulates data supplied by their subscribers, to be accessed by their affiliate bureaus and subscribers.

54.

EXPERIAN and their affiliate bureaus and subscribers have access to consumer credit reports, prepared by *EXPERIAN*, from the same data pool, in the same database, and *EXPERIAN* has duties to each consumer, including plaintiff, about whom they report, as provided in the Fair Credit Reporting Act.

55.

EXPERIAN's subscribers have repeatedly supplied false, fraud-related data to *EXPERIAN* and attributed said data to plaintiff.

56.

Plaintiff advised *EXPERIAN and its predecessor, TRW Inc., for whom EXPERIAN is now liable as its successor*, [collectively "EXPERIAN"] through their subscribers and *directly*, on multiple occasions, of the false, fraud-related data and demanded that the data be removed from her consumer reports and files.

57.

EXPERIAN failed to properly reinvestigate plaintiff's disputes and *EXPERIAN* continued to prepare and issue false consumer reports.

58.

EXPERIAN and their various duped creditors-subscribers, exchanged information about plaintiff's disputes and the fraud accounts through their reinvestigation and fraud divisions and *CAPS system*, internal notes and CDV/ACDV/UDF processes.

58150 - 11

59.

*EXPERIAN* and their various duped creditors-subscribers, were very aware of plaintiff's disputes, as well as their inadequate and illegal reinvestigation, and the subscribers' responses to their contacts and their decision to leave the disputed, false, fraud-related data as attributable to plaintiff.

60.

*EXPERIAN* took inadequate action to correct plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.  Further, *EXPERIAN* has continuously mis-merged data into plaintiff's credit files and consumer credit reports it prepared about plaintiff and published to others.

61.

Likewise they failed to take necessary and reasonable steps to prevent further inaccuracies from entering plaintiff's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by *EXPERIAN* and relayed for further use, reliance and publication by their subscribers.

62.

*EXPERIAN* failed to adopt and follow "reasonable procedures" to assure the maximum possible confidentiality, proper utilization and maximum possible accuracy of Plaintiff's consumer credit and other personal information, as required by the Fair Credit Reporting Act, which they compiled, used and manipulated, in order to prepare consumer credit reports, credit scores, risk factors/denial codes and other economic and prediction data evaluations.

63.

*EXPERIAN* failed to adopt and follow "reasonable procedures" to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting databank, as required by the Fair Credit Reporting Act.

58150 - 12

64.

From some unknown date prior to February, 1993, through the present time period, Defendant, *EXPERIAN*, has continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from the plaintiff and subscribers that such information was inaccurate and fraud-related.

65.

*EXPERIAN* through its fault, as described herein, caused great and irreparable injury to Plaintiff herein.

66.

Through *EXPERIAN*'s actions, inactions and conduct, *EXPERIAN* has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

67.

Further, *EXPERIAN*, by its actions stated above, intentionally inflicted emotional distress on Plaintiff.

68.

Defendant, *EXPERIAN,* has defamed Plaintiff and invaded her privacy.

69.

Defendant, *EXPERIAN*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages under common law, state[s]' laws and/or for willful violation(s) of the provisions of the Fair Credit Reporting Act.

70.

*EXPERIAN* also breached its various and multiple agreements and contracts with their various subscribers [whose fraud accounts, inquiries and incoming personal identification data were disputed by plaintiff], by continuously reporting false credit information about plaintiff despite clear information in their files showing incoming fraud-related data associated with the fraud address while a second pool of accurate data, associated with plaintiff's identifiers and true address, was

13

58150 -13

also incoming and present in their records.

71.

Further, by violating the FCRA and using unreasonable procedure for data accuracy and integrity, *EXPERIAN* likewise breached their contractual duties.

72.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *EXPERIAN*'s breach of those contracts and further asserts the breach of those agreements herein. Those breaches have damaged plaintiff.

73.

Further, on multiple occasions, *EXPERIAN* sent reinvestigation results to plaintiff which evidenced their decision to merely mimic its subscribers' replies to the inadequate reinvestigation disputes *EXPERIAN* conveyed.

74.

Further, *EXPERIAN's* reinvestigation results contained conflicting responses wherein it "verified" certain fraud accounts, personal identification information, and inquiries and "deleted" other disputed fraud accounts, personal identification information, and inquiries.

75.

*EXPERIAN* suggested that a number of the duped creditors had "verified" the fraud accounts.

76.

From some unknown date prior to 1998, through the present time period, Defendant, *EXPERIAN*, has continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice by the plaintiff and subscribers that such information was erroneous.

### LIABILITY OF SPECIALTY and STAGE

77.

Upon information and belief, in or about *June, 1995*, the

14

58150 - 14

defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendants, *SPECIALTY and STAGE*.

78.

Upon information and belief, the defrauder filled out *SPECIALTY's and STAGE*'s standard credit applications, listing Plaintiff's social security number and other credit and personal information of Plaintiff in each application.

79.

The account created by *SPECIALTY and STAGE*, upon the fraudulent application of the defrauder was assigned account number #400068931.

80.

The reportings and inquiries made by *SPECIALTY and STAGE*, due to the fraudulent application and account of the defrauder, *were made under Equifax/CSC subscriber name Specialty Retailers and under Experian/TRW subscriber name Stage Department Stores*.

81.

The defrauder[s] made purchases on the fraudulently obtained *SPECIALTY and STAGE* account.

82.

To the best of her knowledge, Plaintiff has never made application for credit with *SPECIALTY and STAGE*.  Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

83.

Defendants, *SPECIALTY and STAGE*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extensions of credit and failed to employ any procedures designed to insure that the extensions of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective applications.

84.

Defendants, *SPECIALTY and STAGE*, knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the

15

58150- 15

possibility that someone would impersonate a credit worthy
consumer[s], like plaintiff, in order to open a fraudulent
account in the plaintiff's name/identity.

85.

Defendants, **SPECIALTY and STAGE**, owed duties of reasonable
care to plaintiff, in whose name and identity a credit account
was opened and created, to ensure that the person[s] opening the
account and to whom credit extensions, merchandise and cards were
given was not an imposter.

86.

Defendants, **SPECIALTY and STAGE**, failed in their duties to
employ commercially reasonable means of verifying that the
person[s] opening the credit account and receiving the credit
devices, extensions and merchandise was [were] not an
imposter[s].                          87.

The issuance and delivery of credit, credit cards,
extensions and merchandise, as well as credit reporting and
collection, are the most basic and inherent components of
defendants', **SPECIALTY's and STAGE's**, businesses.

88.

Thereafter, Defendants, **SPECIALTY and STAGE**, recklessly,
maliciously and/or intentionally, published and disseminated
false and inaccurate information concerning Plaintiff with
reckless disregard for the truth, based upon the unpaid,
fraudulent purchases of the defrauder[s].

89.

**SPECIALTY's and STAGE's** publishing of such false and
inaccurate information has severely damaged the personal and
consumer reputation of Plaintiff and caused severe humiliation,
and emotional distress and mental anguish.

90.

**SPECIALTY and STAGE** were notified of the fraudulent schemes,
once Plaintiff became aware of the facts sufficient to believe
the defrauder created a fraudulent account with Defendants,
**SPECIALTY and STAGE**, however, **SPECIALTY and STAGE** continued to

58150-16

issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

91.

*SPECIALTY and STAGE*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

92.

Through their actions, inactions and fault, Defendants, *SPECIALTY and STAGE,* have, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

93.

Further, *SPECIALTY and STAGE*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

94.

*SPECIALTY's and STAGE*'s reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

95.

Beginning in August, 1997, Plaintiff called and wrote *SPECIALTY and STAGE* and disputed the fraud-related account.

96.

Following August, 1997, plaintiff called, wrote and communicated with *SPECIALTY and STAGE* about plaintiff's disputes.

97.

Despite the disputes, *SPECIALTY and STAGE* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud account as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

98.

Further, fraud-related inquiries were posted to plaintiff's credit files, impermissibly, and were not timely removed despite plaintiff's complaints.

58/50 - 17

99.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *SPECIALTY and STAGE* that plaintiff disputed the account.

100.

Despite receipt of the same dispute a number of times, *SPECIALTY and STAGE* repeatedly reported the false, derogatory information to third persons.

101.

According to *credit reporting agencies' reports, SPECIALTY and STAGE* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

102.

*SPECIALTY and STAGE* also breached their various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"]*, [and/or *their affiliates*] [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

103.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *SPECIALTY's and STAGE's* breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

104.

*SPECIALTY and STAGE* have likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

105.

Defendants, *SPECIALTY and STAGE*, are aware that their reportings and activities would [and will] damage plaintiff and

58150-18

her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

106.

Despite the numerous and varied disputes, **SPECIALTY and STAGE** failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

107.

The credit reporting agencies maintain subscriber contracts and relationships with **SPECIALTY and STAGE**, separately and individually, under which **SPECIALTY and STAGE** are allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

108.

Under the subscriber contracts **SPECIALTY and STAGE,** **individually and separately,** owe a number of duties, including the duty to report truthful and accurate information about their [**SPECIALTY's and STAGE**'s] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

109.

On numerous occasions, **SPECIALTY and STAGE** reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

110.

Defendants, **SPECIALTY and STAGE**, have engaged in unfair and deceptive trade and business practices and are liable under various states' laws for those violations.

111.

In addition to actual or compensatory damages, and other

58150 - 19

sums, Defendants, *SPECIALTY and STAGE*, are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### LIABILITY OF MERCURY

112.

Upon information and belief, in or about *May, 1994*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendant*, MERCURY*.

113.

Upon information and belief, the defrauder filled out *MERCURY*'s standard credit application, listing Plaintiff's social security number and other credit and personal information of Plaintiff.

114.

The account created by *MERCURY*, upon the fraudulent application of the defrauder was assigned account number #6B24124552950.

115.

The defrauder[s] made purchases on the fraudulently obtained *MERCURY* account.

116.

To the best of her knowledge, Plaintiff has never made application for credit with *MERCURY*.

117.

Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

118.

Defendant*, MERCURY*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extension of credit and failed to employ any procedures designed to insure that the extension of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective application.

58150 - 20

119.

Defendant, *MERCURY,* knew or should have known of the
existence of widespread fraud against the credit and retail
industries and Defendants should have been aware of the
possibility that someone would impersonate a credit worthy
consumer[s], like plaintiff, in order to open a fraudulent
account in the plaintiff's name/identity.

120.

Defendant, *MERCURY*, owed duties of reasonable care to
plaintiff, in whose name and identity a credit account was opened
and created, to ensure that the person[s] opening the account and
to whom credit extension, merchandise and cards were given was
not an imposter.

121.

Defendant, *MERCURY*, failed in their duties to employ
commercially reasonable means of verifying that the person[s]
opening the credit account and receiving the credit devices,
extension and merchandise was [were] not an imposter[s].

122.

The issuance and delivery of credit, credit cards,
extensions and merchandise, as well as credit reporting and
collection, are the most basic and inherent components of
defendants', *MERCURY*'s, businesses.

123.

Thereafter, Defendant, *MERCURY,* recklessly, maliciously
and/or intentionally, published and disseminated false and
inaccurate information concerning Plaintiff with reckless
disregard for the truth, based upon the unpaid, fraudulent
purchases of the defrauder[s].

124.

*MERCURY*'s publishing of such false and inaccurate
information has severely damaged the personal and consumer
reputation of Plaintiff and caused severe humiliation, and
emotional distress and mental anguish.

58150-21

125.

MERCURY was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with Defendant, MERCURY, however, MERCURY continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

126.

MERCURY, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

127.

Through their actions, inactions and fault, Defendant, MERCURY, has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

128.

Further, MERCURY, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

129.

MERCURY's reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

130.

Beginning in August, 1997, Plaintiff called and wrote MERCURY on a number of occasions and disputed the fraud-related account.

131.

Despite the disputes, MERCURY failed to appropriately react to the disputed billing errors and continued to falsely report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

132.

Further, CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP., [as well as their affiliates], may have also advised MERCURY that plaintiff disputed the account.

58150-22

133.

Despite receipt of the same dispute a number of times, *MERCURY* repeatedly reported the false, derogatory information to third persons.

134.

According to *the national credit reporting agencies' reports*, *MERCURY* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

135.

*MERCURY* also breached its various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"], [and/or their affiliates]* [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

136.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *MERCURY*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

137.

*MERCURY* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

138.

Defendant*, MERCURY*, is aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

139.

Despite the numerous and varied disputes, *MERCURY* failed to

58/50 -23

appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

140.

The credit reporting agencies maintain subscriber contracts and relationships with *MERCURY*, separately and individually, under which *MERCURY* is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

141.

Under the subscriber contracts *MERCURY* owed a number of duties, including the duty to report truthful and accurate information about its [*MERCURY's*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

142.

On numerous occasions, *MERCURY* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

143.

Defendant*, MERCURY*, has engaged in unfair and deceptive trade and business practices and is liable under various states' laws for those violations.

144.

In addition to actual or compensatory damages, and other sums, Defendant*, MERCURY*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### *LIABILITY OF LANE BRYANT and WFNNB*

145.

Upon information and belief, in or about *October, 1995*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendants, *LANE BRYANT and*

*WFNNB.*

146.

Upon information and belief, the defrauder filled out *LANE BRYANT's and WFNNB*'s standard credit applications, listing Plaintiff's social security number and other credit and personal information of Plaintiff in each application.

147.

The account created by *LANE BRYANT and WFNNB*, upon the fraudulent application of the defrauder was assigned account number #786164426.

148.

The defrauder[s] made purchases on the fraudulently obtained *LANE BRYANT and WFNNB* account.

149.

To the best of her knowledge, Plaintiff has never made application for credit with *LANE BRYANT and WFNNB*.  Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

150.

Defendants, *LANE BRYANT and WFNNB*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extensions of credit and failed to employ any procedures designed to insure that the extensions of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective applications.

151.

Defendants, *LANE BRYANT and WFNNB*, knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent account in the plaintiff's name/identity.

152.

Defendants, *LANE BRYANT and WFNNB*, owed duties of reasonable

25

58150 -25

care to plaintiff, in whose name and identity a credit account was opened and created, to ensure that the person[s] opening the account and to whom credit extensions, merchandise and cards were given was not an imposter.

153.

Defendants, **LANE BRYANT and WFNNB**, failed in their duties to employ commercially reasonable means of verifying that the person[s] opening the credit account and receiving the credit devices, extensions and merchandise was [were] not an imposter[s].

154.

The issuance and delivery of credit, credit cards, extensions and merchandise, as well as credit reporting and collection, are the most basic and inherent components of defendants', **LANE BRYANT's and WFNNB's**, businesses.

155.

Thereafter, Defendants, **LANE BRYANT and WFNNB**, recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

156.

**LANE BRYANT's and WFNNB's** publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

157.

**LANE BRYANT and WFNNB** were notified of the fraudulent schemes, once Plaintiff became aware of the facts sufficient to believe the defrauder created a fraudulent account with Defendants, **LANE BRYANT and WFNNB**, however, **LANE BRYANT and WFNNB** continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

158.

*LANE BRYANT and WFNNB*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

159.

Through their actions, inactions and fault, Defendants, *LANE BRYANT and WFNNB*, have, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

160.

Further, *LANE BRYANT and WFNNB*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

161.

*LANE BRYANT's and WFNNB*'s reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

162.

Beginning in 1996, Plaintiff called and wrote *LANE BRYANT and WFNNB* and disputed the fraud-related account.

163.

Following 1996, plaintiff further called, wrote and communicated with *LANE BRYANT and WFNNB* about plaintiff's disputes.

164.

Despite the disputes, *LANE BRYANT and WFNNB* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud account as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

165.

Further, fraud-related inquiries were posted to plaintiff's credit files, impermissibly, and were not timely removed despite plaintiff's complaints.

166.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as

58180 - 27

well as *their affiliates]*, may have also advised **LANE BRYANT and WFNNB** that plaintiff disputed the account.

167.

Despite receipt of the same dispute a number of times, **LANE BRYANT and WFNNB** repeatedly reported the false, derogatory information to third persons.

168.

According to **credit reporting agencies' reports**, **LANE BRYANT and WFNNB** continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

169.

**LANE BRYANT** and **WFNNB** also breached their various and multiple agreements and contracts with the credit reporting agencies, **Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"]**, *[and/or their affiliates]* [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

170.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by **LANE BRYANT's and WFNNB**'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

171.

**LANE BRYANT and WFNNB** have likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

172.

Defendants, **LANE BRYANT and WFNNB**, are aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her

28

58150 - 28

obligations to all of her creditors.

173.

Despite the numerous and varied disputes, **LANE BRYANT and WFNNB** failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

174.

The credit reporting agencies maintain subscriber contracts and relationships with **LANE BRYANT and WFNNB**, separately and individually, under which **LANE BRYANT and WFNNB** are allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

175.

Under the subscriber contracts **LANE BRYANT and WFNNB, individually and separately,** owe a number of duties, including the duty to report truthful and accurate information about their [**LANE BRYANT's and WFNNB's**] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

176.

On numerous occasions, **LANE BRYANT and WFNNB** reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

177.

Defendants, **LANE BRYANT and WFNNB**, have engaged in unfair and deceptive trade and business practices and are liable under various states' laws for those violations.  Defendant, **WFNNB**, has acted as a debt collector and has violated state and federal debt collection laws by pursuing a vexatious and harassing collection campaign against a person who does not owe any monies to them, as agent for SMB, or to SMB, as their agent.

58150-29

178.

In addition to actual or compensatory damages, and other sums, Defendants, **LANE BRYANT and WFNNB**, are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### LIABILITY OF NATIONSBANK and HMC

179.

Upon information and belief, in or about *July, 1996*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendants, **NATIONSBANK and HMC**.

180.

Upon information and belief, the defrauder filled out **NATIONSBANK's and HMC**'s standard credit applications, listing Plaintiff's social security number and other credit and personal information of Plaintiff in each application.

181.

The account created by **NATIONSBANK and HMC**, upon the fraudulent application of the defrauder was assigned account number *#84191*.

182.

The defrauder[s] made purchases on the fraudulently obtained **NATIONSBANK and HMC** account.

183.

To the best of her knowledge, Plaintiff has never made application for credit with **NATIONSBANK and HMC**.  Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

184.

Defendants, **NATIONSBANK and HMC**, failed to employ reasonable procedures to adequately identify the person(s) requesting the extensions of credit and failed to employ any procedures designed to insure that the extensions of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective applications.

185.

Defendants, *NATIONSBANK and HMC*, knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent account in the plaintiff's name/identity.

186.

Defendants, *NATIONSBANK and HMC*, owed duties of reasonable care to plaintiff, in whose name and identity a credit account was opened and created, to ensure that the person[s] opening the account and to whom credit extensions, merchandise and cards were given was not an imposter.

187.

Defendants, *NATIONSBANK and HMC*, failed in their duties to employ commercially reasonable means of verifying that the person[s] opening the credit account and receiving the credit devices, extensions and merchandise was [were] not an imposter[s].

188.

The issuance and delivery of credit, credit cards, extensions and merchandise, as well as credit reporting and collection, are the most basic and inherent components of defendants', *NATIONSBANK's and HMC*'s, businesses.

189.

Thereafter, Defendants, *NATIONSBANK and HMC*, recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

190.

*NATIONSBANK's and HMC*'s publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

58180-31

191.

**NATIONSBANK and HMC** were notified of the fraudulent schemes, once Plaintiff became aware of the facts sufficient to believe the defrauder created a fraudulent account with Defendants, **NATIONSBANK and HMC**, however, **NATIONSBANK and HMC** continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

192.

**NATIONSBANK and HMC**, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

193.

Through their actions, inactions and fault, Defendants, **NATIONSBANK and HMC**, have, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

194.

Further, **NATIONSBANK and HMC**, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

195.

**NATIONSBANK's and HMC's** reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

196.

Beginning in August, 1997, Plaintiff called and wrote **NATIONSBANK and HMC** and disputed the fraud-related account.

197.

Following August, 1997, plaintiff called, wrote and communicated with **NATIONSBANK and HMC** about plaintiff's disputes.

198.

Despite the disputes, **NATIONSBANK and HMC** failed to appropriately react to the disputed billing errors and continued to falsely report said fraud account as attributable to plaintiff and used continued false reportings in an attempt to collect said

58150-3²

disputed amounts from plaintiff.

199.

Further, fraud-related inquiries were posted to plaintiff's credit files, impermissibly, and were not timely removed despite plaintiff's complaints.

200.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *NATIONSBANK and HMC* that plaintiff disputed the account.

201.

Despite receipt of the same dispute a number of times, *NATIONSBANK and HMC* repeatedly reported the false, derogatory information to third persons.

202.

According to *credit reporting agencies' reports*, *NATIONSBANK and HMC* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

203.

*NATIONSBANK and HMC* also breached their various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"]*, [and/or *their affiliates*] [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

204.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *NATIONSBANK's and HMC's* breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

205.

*NATIONSBANK and HMC* have likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously

33

58150-33

avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

206.

Defendants, *NATIONSBANK and HMC*, are aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

207.

Despite the numerous and varied disputes, *NATIONSBANK and HMC* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

208.

The credit reporting agencies maintain subscriber contracts and relationships with *NATIONSBANK and HMC*, separately and individually, under which *NATIONSBANK and HMC* are allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

209.

Under the subscriber contracts *NATIONSBANK and HMC, individually and separately,* owe a number of duties, including the duty to report truthful and accurate information about their [*NATIONSBANK's and HMC's*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

210.

On numerous occasions, *NATIONSBANK and HMC* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

58180-34

211.

Defendants, **NATIONSBANK and HMC**, have engaged in unfair and deceptive trade and business practices and are liable under various states' laws for those violations.

212.

In addition to actual or compensatory damages, and other sums, Defendants, **NATIONSBANK and HMC**, are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### LIABILITY OF BELLSOUTH

213.

Upon information and belief, in or about *September, 1996*, the defrauder[s] made fraudulent application[s] for an extension of credit, services and/or credit cards from Defendant, **BELLSOUTH**.

214.

Upon information and belief, the defrauder filled out **BELLSOUTH**'s standard credit application[s], listing Plaintiff's social security number and other credit and personal information of Plaintiff.

215.

The accounts created by **BELLSOUTH**, upon the fraudulent application[s] of the defrauder was assigned account numbers *#205-60325221289* and *#205-603373196XXXX*.

216.

The defrauder[s] made purchases on the fraudulently obtained **BELLSOUTH** account[s].

217.

To the best of her knowledge, Plaintiff has never made application for credit with **BELLSOUTH**.

218.

Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

58150-35

219.

Defendant, *BELLSOUTH*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extension of credit and failed to employ any procedures designed to insure that the extension of credit, services, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective application.

220.

Defendant, *BELLSOUTH,* knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent account[s] in the plaintiff's name/identity.

221.

Defendant, *BELLSOUTH*, owed duties of reasonable care to plaintiff, in whose name and identity a credit account[s] was [were] opened and created, to ensure that the person[s] opening the accounts and to whom credit extension, merchandise and cards were given was not an imposter.

222.

Defendant, *BELLSOUTH*, failed in their duties to employ commercially reasonable means of verifying that the person[s] opening the credit account[s] and receiving the credit devices, services, extension and merchandise was [were] not an imposter[s].

223.

The issuance and delivery of credit, services, credit cards, extensions and merchandise, as well as credit reporting and collection, are the most basic and inherent components of defendants', *BELLSOUTH*'s, businesses.

224.

Thereafter, Defendant, *BELLSOUTH,* recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless

58150-36

disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

225.

*BELLSOUTH*'s publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

226.

*BELLSOUTH* was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with Defendant, *BELLSOUTH*, however, *BELLSOUTH* continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

227.

*BELLSOUTH*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

228.

Through their actions, inactions and fault, Defendant, *BELLSOUTH*, has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

229.

Further, *BELLSOUTH*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

230.

*BELLSOUTH*'s reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

231.

Beginning in August, 1997, Plaintiff called and wrote *BELLSOUTH* on a number of occasions and disputed the fraud-related accounts.

232.

Despite the disputes, *BELLSOUTH* failed to appropriately react to the disputed billing errors and continued to falsely

37

58150-37

report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

233.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *BELLSOUTH* that plaintiff disputed the accounts.

234.

Despite receipt of the same dispute a number of times, *BELLSOUTH* repeatedly reported the false, derogatory information to third persons.

235.

According to *the national credit reporting agencies'* *reports*, *BELLSOUTH* continued to falsely report about plaintiff and attribute the fraud account[s] to plaintiff.

236.

*BELLSOUTH* also breached its various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc.* ["Equifax"], *CSC Credit Services, Inc.* ["CSC"], *TRW Inc.* ["TRW"], *Experian Information Solutions, Inc.* ["Experian"], *and Trans Union Corp.* ["Trans Union"], [and/or *their affiliates*] [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

237.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *BELLSOUTH*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

238.

*BELLSOUTH* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

58150 - 38

239.

Defendant, *BELLSOUTH*, is aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

240.

Despite the numerous and varied disputes, *BELLSOUTH* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

241.

The credit reporting agencies maintain subscriber contracts and relationships with *BELLSOUTH*, separately and individually, under which *BELLSOUTH* is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

242.

Under the subscriber contracts *BELLSOUTH* owed a number of duties, including the duty to report truthful and accurate information about its [*BELLSOUTH's*] customers and other consumers, including plaintiff. Plaintiff is a stipulated beneficiary of those contracts.

243.

On numerous occasions, *BELLSOUTH* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

244.

Defendant, *BELLSOUTH*, has engaged in unfair and deceptive trade and business practices and is liable under various states' laws for those violations.

58180-39

245.

In addition to actual or compensatory damages, and other sums, Defendant, *BELLSOUTH*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### LIABILITY OF JFS and GORDON'S

246.

Upon information and belief, in or about *July, 1992*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendants, *JFS and GORDON'S*.

247.

Upon information and belief, the defrauder filled out *JFS' and GORDON'S* standard credit applications, listing Plaintiff's social security number and other credit and personal information of Plaintiff in each application.

248.

The account created by *JFS and GORDON'S*, upon the fraudulent application of the defrauder was assigned account number *#227900485136*.

249.

The defrauder[s] made purchases on the fraudulently obtained *JFS and GORDON'S* account.

250.

To the best of her knowledge, Plaintiff has made application for credit with *JFS and GORDON'S* once and that account was timely paid and closed at her request.  Nonetheless, Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

251.

Defendants, *JFS and GORDON'S*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extensions of credit and failed to employ any procedures designed to insure that the extensions of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective applications.

58150-40

252.

Defendants, *JFS and GORDON'S*, knew or should have known of
the existence of widespread fraud against the credit and retail
industries and Defendants should have been aware of the
possibility that someone would impersonate a credit worthy
consumer[s], like plaintiff, in order to open a fraudulent
account in the plaintiff's name/identity.

253.

Defendants, *JFS and GORDON'S*, owed duties of reasonable care
to plaintiff, in whose name and identity a credit account was
opened and created, to ensure that the person[s] opening the
account and to whom credit extensions, merchandise and cards were
given was not an imposter.

254.

Defendants, *JFS and GORDON'S*, failed in their duties to
employ commercially reasonable means of verifying that the
person[s] opening the credit account and receiving the credit
devices, extensions and merchandise was [were] not an
imposter[s].

255.

The issuance and delivery of credit, credit cards,
extensions and merchandise, as well as credit reporting and
collection, are the most basic and inherent components of
defendants', *JFS' and GORDON'S*, businesses.

256.

Thereafter, Defendants, *JFS and GORDON'S*, recklessly,
maliciously and/or intentionally, published and disseminated
false and inaccurate information concerning Plaintiff with
reckless disregard for the truth, based upon the unpaid,
fraudulent purchases of the defrauder[s].

257.

*JFS' and GORDON'S* publishing of such false and inaccurate
information has severely damaged the personal and consumer
reputation of Plaintiff and caused severe humiliation, and
emotional distress and mental anguish.

58/50-41

258.

   *JFS and GORDON'S* were notified of the fraudulent schemes, once Plaintiff became aware of the facts sufficient to believe the defrauder created a fraudulent account with Defendants, *JFS and GORDON'S*, however, *JFS and GORDON'S* continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

259.

   *JFS and GORDON'S*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

260.

   Through their actions, inactions and fault, Defendants, *JFS and GORDON'S*, have, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

261.

   Further, *JFS and GORDON'S*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.                              262.

   *JFS' and GORDON'S* reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

263.

   Beginning in August, 1997, Plaintiff called and wrote *JFS and GORDON'S* and disputed the fraud-related account.

264.

   Following August, 1997, plaintiff called, wrote and communicated with *JFS and GORDON'S* about plaintiff's disputes.

265.

   Despite the disputes, *JFS and GORDON'S* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud account as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

58150-42

266.

Further, fraud-related inquiries were posted to plaintiff's credit files, impermissibly, and were not timely removed despite plaintiff's complaints.

267.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *JFS and GORDON'S* that plaintiff disputed the account.

268.

Despite receipt of the same dispute a number of times, *JFS and GORDON'S* repeatedly reported the false, derogatory information to third persons.

269.

According to *credit reporting agencies' reports*, *JFS and GORDON'S* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

270.

*JFS and GORDON'S* also breached their various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"]*, [*and/or their affiliates*] [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

271.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *JFS' and GORDON'S* breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

272.

*JFS and GORDON'S* have likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the

58150-43

plaintiff, as described more fully herein.

273.

Defendants, *JFS and GORDON'S*, are aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

274.

Despite the numerous and varied disputes, *JFS and GORDON'S* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

275.

The credit reporting agencies maintain subscriber contracts and relationships with *JFS and GORDON'S*, separately and individually, under which *JFS and GORDON'S* are allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

276.

Under the subscriber contracts *JFS and GORDON'S, individually and separately,* owe a number of duties, including the duty to report truthful and accurate information about their [*JFS' and GORDON'S*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

277.

On numerous occasions, *JFS and GORDON'S* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

278.

Defendants, *JFS and GORDON'S*, have engaged in unfair and

58150-44

deceptive trade and business practices and are liable under various states' laws for those violations.

279.

In addition to actual or compensatory damages, and other sums, Defendants, *JFS and GORDON'S*, are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### *LIABILITY OF CATO*

280.

Upon information and belief, in or about *February, 1993*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendant*, CATO*.

281.

Upon information and belief, the defrauder filled out **CATO**'s standard credit application, listing Plaintiff's social security number and other credit and personal information of Plaintiff.

282.

The account created by *CATO*, upon the fraudulent application of the defrauder was assigned account number *#113001607630*.

283.

The defrauder[s] made purchases on the fraudulently obtained *CATO* account.

284.

To the best of her knowledge, Plaintiff has never made application for credit with **CATO**.

285.

Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

286.

Defendant*, CATO*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extension of credit and failed to employ any procedures designed to insure that the extension of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose

385150-45

name and/or identity was listed on the respective application.

287.

Defendant, *CATO*, knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent account in the plaintiff's name/identity.

288.

Defendant, *CATO*, owed duties of reasonable care to plaintiff, in whose name and identity a credit account was opened and created, to ensure that the person[s] opening the account and to whom credit extension, merchandise and cards were given was not an imposter.

289.

Defendant, *CATO*, failed in their duties to employ commercially reasonable means of verifying that the person[s] opening the credit account and receiving the credit devices, extension and merchandise was [were] not an imposter[s].

290.

The issuance and delivery of credit, credit cards, extensions and merchandise, as well as credit reporting and collection, are the most basic and inherent components of defendants', *CATO*'s, businesses.

291.

Thereafter, Defendant, *CATO*, recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

292.

*CATO*'s publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

5815.0 — 46

293.

CATO was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with Defendant, CATO, however, CATO continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

294.

CATO, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

295.

Through their actions, inactions and fault, Defendant, CATO, has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

296.

Further, CATO, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

297.

CATO's reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

298.

Beginning in August, 1997, Plaintiff called and wrote CATO on a number of occasions and disputed the fraud-related account.

299.

Despite the disputes, CATO failed to appropriately react to the disputed billing errors and continued to falsely report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

300.

Further, CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP., [as well as their affiliates], may have also advised CATO that plaintiff disputed the account.

58/50-47

301.

Despite receipt of the same dispute a number of times, *CATO* repeatedly reported the false, derogatory information to third persons.

302.

According to *the national credit reporting agencies' reports*, *CATO* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

303.

*CATO* also breached its various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"], [and/or their affiliates]* [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

304.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *CATO*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

305.

*CATO* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

306.

Defendant, *CATO*, is aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

307.

Despite the numerous and varied disputes, *CATO* failed to

58150 - 48

appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

308.

The credit reporting agencies maintain subscriber contracts and relationships with *CATO*, separately and individually, under which *CATO* is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

309.

Under the subscriber contracts *CATO* owed a number of duties, including the duty to report truthful and accurate information about its [*CATO's*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

310.

On numerous occasions, *CATO* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

311.

Defendant*, CATO*, has engaged in unfair and deceptive trade and business practices and is liable under various states' laws for those violations.

312.

In addition to actual or compensatory damages, and other sums, Defendant*, CATO*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### *LIABILITY OF CRESCENT*

313.

Upon information and belief, in or about *September, 1994*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendant*, CRESCENT*.

314.

Upon information and belief, the defrauder filled out CRESCENT's standard credit application, listing Plaintiff's social security number and other credit and personal information of Plaintiff.

315.

The account created by CRESCENT, upon the fraudulent application of the defrauder was assigned account number #51088947651088947.

316.

The defrauder[s] made purchases on the fraudulently obtained CRESCENT account:

317.

To the best of her knowledge, Plaintiff has never made application for credit with CRESCENT.

318.

Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

319.

Defendant, CRESCENT, failed to employ reasonable procedures to adequately identify the person(s) requesting the extension of credit and failed to employ any procedures designed to insure that the extension of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective application.

320.

Defendant, CRESCENT, knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent account in the plaintiff's name/identity.

321.

Defendant, CRESCENT, owed duties of reasonable care to

58150-50

plaintiff, in whose name and identity a credit account was opened and created, to ensure that the person[s] opening the account and to whom credit extension, merchandise and cards were given was not an imposter.

322.

Defendant, *CRESCENT*, failed in their duties to employ commercially reasonable means of verifying that the person[s] opening the credit account and receiving the credit devices, extension and merchandise was [were] not an imposter[s].

323.

The issuance and delivery of credit, credit cards, extensions and merchandise, as well as credit reporting and collection, are the most basic and inherent components of defendants', *CRESCENT*'s, businesses.

324.

Thereafter, Defendant, *CRESCENT*, recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

325.

*CRESCENT*'s publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

326.

*CRESCENT* was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with Defendant, *CRESCENT*, however, *CRESCENT* continued to issue and/or publish report[s] to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

327.

*CRESCENT*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to

Plaintiff.

328.

Through their actions, inactions and fault, Defendant, *CRESCENT*, has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

329.

Further, *CRESCENT*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

330.

*CRESCENT*'s reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

331.

Beginning in August, 1997, Plaintiff called and wrote *CRESCENT* on a number of occasions and disputed the fraud-related account.

332.

Despite the disputes, *CRESCENT* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

333.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *CRESCENT* that plaintiff disputed the account.

334.

Despite receipt of the same dispute a number of times, *CRESCENT* repeatedly reported the false, derogatory information to third persons.

335.

According to *the national credit reporting agencies' reports*, *CRESCENT* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

336.

*CRESCENT* also breached its various and multiple agreements

52

58150-52

and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"], [and/or their affiliates]* [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

337.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *CRESCENT*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

338.

*CRESCENT* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

339.

Defendant*, CRESCENT*, is aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

340.

Despite the numerous and varied disputes, *CRESCENT* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

341.

The credit reporting agencies maintain subscriber contracts and relationships with *CRESCENT*, separately and individually, under which *CRESCENT* is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all

of the thousands of subscribing entities and persons.

342.

Under the subscriber contracts *CRESCENT* owed a number of duties, including the duty to report truthful and accurate information about its [*CRESCENT's*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

343.

On numerous occasions, *CRESCENT* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

344.

Defendant, *CRESCENT*, has engaged in unfair and deceptive trade and business practices and is liable under various states' laws for those violations.

345.

In addition to actual or compensatory damages, and other sums, Defendant, *CRESCENT*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### *LIABILITY OF K&B*

346.

Upon information and belief, in or about *March, 1995*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendant, *K&B*.

347.

Upon information and belief, the defrauder filled out *K&B's* standard credit application, listing Plaintiff's social security number and other credit and personal information of Plaintiff.

348.

The account created by *K&B*, upon the fraudulent application of the defrauder was assigned account number *#985065077*.

349.

The defrauder[s] made purchases on the fraudulently obtained *K&B* account.

58150-54

350.

To the best of her knowledge, Plaintiff has never made application for credit with *K&B*.

351.

Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

352.

Defendant, *K&B*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extension of credit and failed to employ any procedures designed to insure that the extension of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective application.

353.

Defendant, *K&B,* knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent account in the plaintiff's name/identity.

354.

Defendant, *K&B*, owed duties of reasonable care to plaintiff, in whose name and identity a credit account was opened and created, to ensure that the person[s] opening the account and to whom credit extension, merchandise and cards were given was not an imposter.

355.

Defendant, *K&B*, failed in their duties to employ commercially reasonable means of verifying that the person[s] opening the credit account and receiving the credit devices, extension and merchandise was [were] not an imposter[s].

356.

The issuance and delivery of credit, credit cards, extensions and merchandise, as well as credit reporting and

58150-55

collection, are the most basic and inherent components of defendants', *K&B*'s, businesses.

### 357.

Thereafter, Defendant*, K&B,* recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

### 358.

*K&B*'s publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

### 359.

*K&B* was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with Defendant*, K&B*, however, *K&B* continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

### 360.

*K&B*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

### 361.

Through their actions, inactions and fault, Defendant*, K&B*, has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

### 362.

Further, *K&B*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

### 363.

*K&B*'s reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

371.

*K&B* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

372.

Defendant, *K&B*, is aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

373.

Despite the numerous and varied disputes, *K&B* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

374.

The credit reporting agencies maintain subscriber contracts and relationships with *K&B*, separately and individually, under which *K&B* is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

375.

Under the subscriber contracts *K&B* owed a number of duties, including the duty to report truthful and accurate information about its [*K&B's*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

376.

On numerous occasions, *K&B* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

58

364.

Beginning in August, 1997, Plaintiff called and wrote **K&B** on a number of occasions and disputed the fraud-related account.

365.

Despite the disputes, **K&B** failed to appropriately react to the disputed billing errors and continued to falsely report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

366.

Further, **CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.**, [as well as *their affiliates*], may have also advised **K&B** that plaintiff disputed the account.

367.

Despite receipt of the same dispute a number of times, **K&B** repeatedly reported the false, derogatory information to third persons.

368.

According to **the national credit reporting agencies' reports**, **K&B** continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

369.

**K&B** also breached its various and multiple agreements and contracts with the credit reporting agencies, **Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"],** [and/or *their affiliates*] [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

370.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by **K&B**'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

58150-58

377.

Defendant, *K&B*, has engaged in unfair and deceptive trade and business practices and is liable under various states' laws for those violations.

378.

In addition to actual or compensatory damages, and other sums, Defendant, *K&B*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### *LIABILITY OF HONORS and LA. BELLSOUTH*

379.

Upon information and belief, in or about *1995*, the defrauder[s] made fraudulent application for an extension of credit, services and credit cards from Defendants, *LA. BELLSOUTH*.

380.

Upon information and belief, the defrauder filled out *LA. BELLSOUTH*'s standard credit applications, listing Plaintiff's social security number and other credit and personal information of Plaintiff in each application.

381.

The account created by *LA. BELLSOUTH*, upon the fraudulent application of the defrauder was assigned collection account number *#86836035*, *by LA. BELLSOUTH's collection agent, HONORS*.

382.

The defrauder[s] made purchases on the fraudulently obtained *LA. BELLSOUTH* account.

383.

To the best of her knowledge, Plaintiff has made application for credit with *LA. BELLSOUTH* and that the account for her current phone service was granted but it is not connected with the fraud account described above.  Nonetheless, Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

384.

Defendant, *LA. BELLSOUTH*, failed to employ reasonable procedures to adequately identify the person(s) requesting the

58/50-59

extensions of credit and failed to employ any procedures designed
to insure that the extensions of credit, merchandise, and credit
device(s)/card(s) would reach and be used by the person whose
name and/or identity was listed on the respective applications.

385.

Defendants, *LA. BELLSOUTH*, knew or should have known of the
existence of widespread fraud against the credit and retail
industries and Defendant should have been aware of the
possibility that someone would impersonate a credit worthy
consumer[s], like plaintiff, in order to open a fraudulent
account in the plaintiff's name/identity.

386.

Defendant, *LA. BELLSOUTH*, owed duties of reasonable care to
plaintiff, in whose name and identity a credit account was opened
and created, to ensure that the person[s] opening the account and
to whom credit extensions, merchandise and cards were given was
not an imposter.

387.

Defendants, *LA. BELLSOUTH*, failed in their duties to employ
commercially reasonable means of verifying that the person[s]
opening the credit account and receiving the credit devices,
extensions and merchandise was [were] not an imposter[s].

388.

The issuance and delivery of credit, services, credit cards,
extensions and merchandise, as well as credit reporting and
collection, are the most basic and inherent components of
defendants', *LA. BELLSOUTH*'s, businesses.

389.

Thereafter, Defendants, *LA. BELLSOUTH* and *HONORS*,
recklessly, maliciously and/or intentionally, published and
disseminated false and inaccurate information concerning
Plaintiff with reckless disregard for the truth, based upon the
unpaid, fraudulent purchases of the defrauder[s].

390.

*LA. BELLSOUTH*'s and *HONORS'* publishing of such false and

60

*58150 W*

inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

391.

*LA. BELLSOUTH* and *HONORS* were notified of the fraudulent schemes, once Plaintiff became aware of the facts sufficient to believe the defrauder created a fraudulent account with Defendant, *LA. BELLSOUTH* and *related collection account placed with HONORS*, however, *LA. BELLSOUTH* and *HONORS* continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

392.

*LA. BELLSOUTH* and *HONORS*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

393.

Through their actions, inactions and fault, Defendants, *LA. BELLSOUTH* and *HONORS*, have, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

394.

Further, *LA. BELLSOUTH* and *HONORS*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.                              395.

*LA. BELLSOUTH*'s reckless issuance of credit to an imposter and *LA. BELLSOUTH's* and *HONORS*'efforts to collect the fraud charges from plaintiff gave rise to foreseeable damages incurred by the plaintiff.

396.

Beginning in August, 1997, Plaintiff called and wrote *LA. BELLSOUTH* and *HONORS* and disputed the fraud-related account.

397.

Following August, 1997, plaintiff called, wrote and communicated with *LA. BELLSOUTH* and *HONORS* about plaintiff's disputes.

61

5815.0-41

398.

Despite the disputes, **LA. BELLSOUTH** and **HONORS** failed to appropriately react to the disputed billing errors and continued to falsely report said fraud account as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

399.

Further, fraud-related inquiries were posted to plaintiff's credit files, impermissibly, and were not timely removed despite plaintiff's complaints.

400.

Further, **CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.**, [as well as *their affiliates*], may have also advised **LA. BELLSOUTH** and **HONORS** that plaintiff disputed the account.

401.

Despite receipt of the same dispute a number of times, **LA. BELLSOUTH** and **HONORS** repeatedly reported the false, derogatory information to third persons.  Defendant, **HONORS**, has acted as a debt collector and has violated state and federal debt collection laws by pursuing a vexatious and harassing collection campaign against a person who does not owe any monies to them, as  agent for SMB, or to SMB, as their agent.

402.

According to **credit reporting agencies' reports**, **LA. BELLSOUTH** and **HONORS** continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

403.

**LA. BELLSOUTH** and **HONORS** also breached their various and multiple agreements and contracts with the credit reporting agencies, **Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], Experian Information Solutions, Inc. ["Experian"], TRW Inc. ["TRW"], and Trans Union Corp. ["Trans Union"]**, [and/or *their affiliates*] [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

62

5815.0 - 62

404.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *LA. BELLSOUTH's* and *HONORS'* breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

405.

*LA. BELLSOUTH* and *HONORS* have likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

406.

Defendants, *LA. BELLSOUTH* and *HONORS*, are aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

407.

Despite the numerous and varied disputes, *LA. BELLSOUTH* and *HONORS* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

408.

The credit reporting agencies maintain subscriber contracts and relationships with *LA. BELLSOUTH* and *HONORS*, separately and individually, under which *LA. BELLSOUTH* and *HONORS* are allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

409.

Under the subscriber contracts *LA. BELLSOUTH* and *HONORS, individually and separately,* owe a number of duties, including the duty to report truthful and accurate information about their

58150-63

[*LA. BELLSOUTH's* and *HONORS'*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

### 410.

On numerous occasions, *LA. BELLSOUTH* and *HONORS* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

### 411.

Defendants, *LA. BELLSOUTH* and *HONORS*, have engaged in unfair and deceptive trade and business practices and are liable under various states' laws for those violations.

### 412.

In addition to actual or compensatory damages, and other sums, Defendants, *LA. BELLSOUTH* and *HONORS*, are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### *LIABILITY OF LACK'S*

### 413.

Upon information and belief, in or about *February, 1993*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendant, *LACK'S*.

### 414.

Upon information and belief, the defrauder filled out *LACK's* standard credit application, listing Plaintiff's social security number and other credit and personal information of Plaintiff.

### 415.

The account created by *LACK'S*, upon the fraudulent application of the defrauder was assigned account number #2800000000000151487.

### 416.

The defrauder[s] made purchases on the fraudulently obtained *LACK'S* account.

### 417.

To the best of her knowledge, Plaintiff has never made

58150 - 64

application for credit with *LACK'S*.

418.

Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

419.

Defendant, *LACK'S*, failed to employ reasonable procedures to adequately identify the person(s) requesting the extension of credit and failed to employ any procedures designed to insure that the extension of credit, merchandise, and credit device(s)/card(s) would reach and be used by the person whose name and/or identity was listed on the respective application.

420.

Defendant, *LACK'S,* knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendants should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent account in the plaintiff's name/identity.

421.

Defendant, *LACK'S*, owed duties of reasonable care to plaintiff, in whose name and identity a credit account was opened and created, to ensure that the person[s] opening the account and to whom credit extension, merchandise and cards were given was not an imposter.

422.

Defendant, *LACK'S*, failed in their duties to employ commercially reasonable means of verifying that the person[s] opening the credit account and receiving the credit devices, extension and merchandise was [were] not an imposter[s].

423.

The issuance and delivery of credit, credit cards, extensions and merchandise, as well as credit reporting and collection, are the most basic and inherent components of defendants', *LACK'S,* businesses.

65

424.

Thereafter, Defendant, *LACK'S,* recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

425.

*LACK'S* publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

426.

*LACK'S* was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with Defendant, *LACK'S,* however, *LACK'S* continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

427.

*LACK'S,* through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

428.

Through their actions, inactions and fault, Defendant, *LACK'S,* has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

429.

Further, *LACK'S,* by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

430.

*LACK'S* reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

431.

Beginning in August, 1997, Plaintiff called and wrote *LACK'S* on a number of occasions and disputed the fraud-related account.

432.

Despite the disputes, *LACK'S* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

433.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *LACK'S* that plaintiff disputed the account.

434.

Despite receipt of the same dispute a number of times, *LACK'S* repeatedly reported the false, derogatory information to third persons.

435.

According to **the national credit reporting agencies'** **reports**, *LACK'S* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

436.

*LACK'S* also breached its various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"], [and/or their affiliates]* [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

437.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *LACK'S* breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

438.

*LACK'S* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to

be false and inaccurate information about the plaintiff, as
described more fully herein.

439.

Defendant, *LACK'S*, is aware that their reportings and
activities would [and will] damage plaintiff and her ability to
enjoy life and utilize the credit rating and reputational
property rights she secured by honoring her obligations to all of
her creditors.

440.

Despite the numerous and varied disputes, *LACK'S* failed to
appropriately react to the disputed billing errors and continued
to falsely report said fraud charges as attributable to plaintiff
and used continued false reportings in an attempt to collect said
disputed amounts from plaintiff.

441.

The credit reporting agencies maintain subscriber contracts
and relationships with *LACK'S*, separately and individually, under
which *LACK'S* is allowed to report credit data and have same
placed in the credit reporting files and records of those
entities so that such data may be further reported to any and all
of the thousands of subscribing entities and persons.

442.

Under the subscriber contracts *LACK'S* owed a number of
duties, including the duty to report truthful and accurate
information about its [*LACK'S*] customers and other consumers,
including plaintiff.  Plaintiff is a stipulated beneficiary of
those contracts.

443.

On numerous occasions, *LACK'S* reported, via its contractual
and legal agents, the credit reporting agencies, false and
inaccurate information about the plaintiff, as described more
fully herein.

444.

Defendant, *LACK'S*, has engaged in unfair and deceptive trade
and business practices and is liable under various states' laws

for those violations.

445.

In addition to actual or compensatory damages, and other sums, Defendant, *LACK'S*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

*LIABILITY OF HOLLOWAY*

446.

Upon information and belief, prior to *July, 1996*, the defrauder[s] made fraudulent application for an extension of credit, services and/or credit cards from SMB Radiology ["SMB"], a client and agent of *HOLLOWAY*.

447.

Upon information and belief, the defrauder used Plaintiff's social security number and other credit and personal information of Plaintiff.

448.

The account created by SMB, upon the fraudulent application of the defrauder was assigned account number *#954344, by SMB's agent and debt collector, HOLLOWAY*.

449.

The defrauder[s] made purchases on the fraudulently obtained *SMB* account.

450.

To the best of her knowledge, Plaintiff has never made application for credit with *SMB*.

451.

Plaintiff has never consented to any person making application(s) for credit, with any party, in her name and/or identity.

452.

Defendant, *HOLLOWAY,* knew or should have known of the existence of widespread fraud against the credit and retail industries and Defendant should have been aware of the possibility that someone would impersonate a credit worthy consumer[s], like plaintiff, in order to open a fraudulent

69

account in the plaintiff's name/identity.

453.

Defendant, *HOLLOWAY*, has acted as a debt collector and has violated state and federal debt collection laws by pursuing a vexatious and harassing collection campaign against a person who does not owe any monies to them, as  agent for SMB, or to SMB, as their agent.

454.

*HOLLOWAY* is also liable under the Fair Credit Reporting Act, as a consumer reporting agency, for preparing and issuing consumer reports about plaintiff while failing to employ reasonable procedures to assure the maximum possible accuracy of those reports and for failing to properly and timely reinvestigating disputed data they maintained and published about plaintiff. 15 U.S.C. 1681a, 1681e, 1681i.

455.

Credit reporting and collection, are the most basic and inherent components of defendant's, *HOLLOWAY'S,* business.

456.

Defendant, *HOLLOWAY,* recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

457.

*HOLLOWAY'S* publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

458.

*HOLLOWAY'S* was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with SMB, however, *HOLLOWAY* continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and

58150-70

false information about the Plaintiff.

459.

*HOLLOWAY*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

460.

Through their actions, inactions and fault, Defendant, *HOLLOWAY*, has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

461.

Further, *HOLLOWAY*, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

462.

Beginning in August, 1997, Plaintiff called and wrote *HOLLOWAY* on a number of occasions and disputed the fraud-related account.

463.

Despite the disputes, *HOLLOWAY* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

464.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *HOLLOWAY* that plaintiff disputed the account.

465.

Despite receipt of the same dispute a number of times, *HOLLOWAY* repeatedly reported the false, derogatory information to third persons.

466.

According to *the national credit reporting agencies' reports*, *HOLLOWAY* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

58150-71

467.

HOLLOWAY also breached its various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"], [and/or their affiliates]* [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

468.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *HOLLOWAY's* breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

469.

*HOLLOWAY* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

470.

Defendant*, HOLLOWAY*, is aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

471.

Despite the numerous and varied disputes, *HOLLOWAY* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

472.

The credit reporting agencies maintain affiliate and/or subscriber contracts and relationships with *HOLLOWAY*, separately and individually, under which *HOLLOWAY* is allowed to report

58150-72

credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

473.

Under the affiliate and/or subscriber contracts *HOLLOWAY* owed a number of duties, including the duty to report truthful and accurate information about their [*SMB*'s and *HOLLOWAY's*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated beneficiary of those contracts.

474.

On numerous occasions, *HOLLOWAY* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

475.

Defendant, *HOLLOWAY*, has engaged in unfair and deceptive trade and business practices and is liable under various states' laws for those violations.

476.

In addition to actual or compensatory damages, and other sums, Defendant, *HOLLOWAY*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

### *LIABILITY OF CAPITAL ONE*

477.

Upon information and belief, in or about *June, 1995*, the defrauder[s] made fraudulent application for an extension of credit and/or credit cards from Defendant, *CAPITAL ONE*.

478.

Upon information and belief, the defrauder filled out *CAPITAL ONE*'s standard credit application, listing Plaintiff's social security number and other credit and personal information of Plaintiff.

479.

The account created by *CAPITAL ONE*, upon the fraudulent

58150-73

application of the defrauder was assigned account number
#2222028400068931.

### 480.

The defrauder[s] made purchases on the fraudulently obtained
*CAPITAL ONE* account.

### 481.

To the best of her knowledge, Plaintiff has never made
application for credit with *CAPITAL ONE*.

### 482.

Plaintiff has never consented to any person making
application(s) for credit, with any party, in her name and/or
identity.

### 483.

Defendant, *CAPITAL ONE*, failed to employ reasonable
procedures to adequately identify the person(s) requesting the
extension of credit and failed to employ any procedures designed
to insure that the extension of credit, merchandise, and credit
device(s)/card(s) would reach and be used by the person whose
name and/or identity was listed on the respective application.

### 484.

Defendant, *CAPITAL ONE,* knew or should have known of the
existence of widespread fraud against the credit and retail
industries and Defendants should have been aware of the
possibility that someone would impersonate a credit worthy
consumer[s], like plaintiff, in order to open a fraudulent
account in the plaintiff's name/identity.

### 485.

Defendant, *CAPITAL ONE*, owed duties of reasonable care to
plaintiff, in whose name and identity a credit account was opened
and created, to ensure that the person[s] opening the account and
to whom credit extension, merchandise and cards were given was
not an imposter.

### 486.

Defendant, *CAPITAL ONE*, failed in their duties to employ
commercially reasonable means of verifying that the person[s]

58150 - 74

opening the credit account and receiving the credit devices, extension and merchandise was [were] not an imposter[s].

487.

The issuance and delivery of credit, credit cards, extensions and merchandise, as well as credit reporting and collection, are the most basic and inherent components of defendants', *CAPITAL ONE*'s, businesses.

488.

Thereafter, Defendant*, CAPITAL ONE,* recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth, based upon the unpaid, fraudulent purchases of the defrauder[s].

489.

*CAPITAL ONE*'s publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

490.

*CAPITAL ONE* was notified of the fraudulent scheme, once Plaintiff became aware of the facts sufficient to believe the defrauder created fraudulent accounts with Defendant*, CAPITAL ONE*, however, *CAPITAL ONE* continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

491.

*CAPITAL ONE*, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

492.

Through their actions, inactions and fault, Defendant*, CAPITAL ONE*, has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded her privacy.

493.

Further, *CAPITAL ONE*, by their actions, inactions and fault,

intentionally inflicted emotional distress on Plaintiff.

494.

*CAPITAL ONE*'s reckless issuance of credit to an imposter gave rise to foreseeable damages incurred by the plaintiff.

495.

Beginning in August, 1997, Plaintiff called and wrote *CAPITAL ONE* on a number of occasions and disputed the fraud-related account.

496.

Despite the disputes, *CAPITAL ONE* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud accounts as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

497.

Further, *CSC, ECIS, TRW, EXPERIAN and TRANS UNION CORP.*, [as well as *their affiliates*], may have also advised *CAPITAL ONE* that plaintiff disputed the account.

498.

Despite receipt of the same dispute a number of times, *CAPITAL ONE* repeatedly reported the false, derogatory information to third persons.

499.

According to *the national credit reporting agencies' reports*, *CAPITAL ONE* continued to falsely report about plaintiff and attribute the fraud account to plaintiff.

500.

*CAPITAL ONE* also breached its various and multiple agreements and contracts with the credit reporting agencies, *Equifax Credit Information Services, Inc. ["Equifax"], CSC Credit Services, Inc. ["CSC"], TRW Inc. ["TRW"], Experian Information Solutions, Inc. ["Experian"], and Trans Union Corp. ["Trans Union"], [and/or their affiliates]* [collectively "credit reporting agencies"], by continuously reporting false credit information about plaintiff.

76

58150 - 76

501.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *CAPITAL ONE*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

502.

*CAPITAL ONE* has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2, by continuously reporting false and inaccurate information which they knew and/or consciously avoided knowing to be false and inaccurate information about the plaintiff, as described more fully herein.

503.

Defendant*, CAPITAL ONE*, is aware that their reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize the credit rating and reputational property rights she secured by honoring her obligations to all of her creditors.

504.

Despite the numerous and varied disputes, *CAPITAL ONE* failed to appropriately react to the disputed billing errors and continued to falsely report said fraud charges as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

505.

The credit reporting agencies maintain subscriber contracts and relationships with *CAPITAL ONE*, separately and individually, under which *CAPITAL ONE* is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

506.

Under the subscriber contracts *CAPITAL ONE* owed a number of duties, including the duty to report truthful and accurate information about its [*CAPITAL ONE's*] customers and other consumers, including plaintiff.  Plaintiff is a stipulated

58150- 77

beneficiary of those contracts.

507.

On numerous occasions, *CAPITAL ONE* reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

508.

Defendant, *CAPITAL ONE*, has engaged in unfair and deceptive trade and business practices and is liable under various states' laws for those violations.

509.

In addition to actual or compensatory damages, and other sums, Defendant, *CAPITAL ONE*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages.

## ADDITIONAL ALLEGATIONS

510.

Defendants have tortiously and illegally damaged plaintiff's most valued property right and asset through their fault described herein.

511.

The types of injuries and harms incurred by plaintiff were foreseeable.  Each defendant was in the best position[s], singularly and collectively, to prevent the fraud and false reportings.

512.

Plaintiff respectfully requests that this Honorable Court order defendants, separately, in the attached discovery Orders, to produce certain documents and information to Plaintiff's counsel within thirty [30] days of receipt of service of process.

*WHEREFORE PLAINTIFF, ANGELA N. BOYETT, PRAYS* that after all due proceedings be had there be judgment herein in favor of Plaintiff and against Defendants as follows:

1)  That there be Judgment in favor of *ANGELA N. BOYETT* and against *EQUIFAX CREDIT INFORMATION SERVICES, INC., CSC CREDIT SERVICES, INC., EXPERIAN INFORMATION SOLUTIONS, INC., SPECIALTY*

58150 - 78

*RETAILERS, STAGE STORES, INC. D/B/A STAGE
DEPARTMENT STORES, MERCURY FINANCE COMPANY A/K/A
MERCURY FINANCE COMPANY OF LOUISIANA, LANE BRYANT,
WORLD FINANCIAL NETWORK NATIONAL BANK,
NATIONSBANK, N.A., A/K/A NCNB CORP., HEILIG-MEYERS
COMPANY, BELLSOUTH MOBILITY, INC., JEWELERS
NATIONAL BANK A/K/A JEWELERS FINANCIAL SERVICE, A
DIVISION OF ZALES, GORDON'S JEWELERS, THE CATO
CORPORATION, CRESCENT BANK & TRUST A/K/A CITY BANK
& TRUST, RITE AID PHARMACY F/K/A KATZ & BESTHOFF,
INC. A/K/A K&B, INC., HONOR CREDITORS AGENCY,
LOUISIANA BELLSOUTH, LACK'S NO. 40, INC. A/K/A
LACK'S STORES, INC., CREDIT BUREAU OF MONTGOMERY
F/K/A HOLLOWAY CREDIT BUREAU A/K/A CREDIT BUREAU
COLLECTION DEPARTMENT, and CAPITAL ONE BANK,*
jointly, severally and in solido, for all
reasonable damages sustained by Plaintiff
including but not limited to compensatory damages
associated with the costs of out-of-pocket
expenses, pain and suffering, embarrassment,
inconvenience, lost economic opportunity, loss of
incidental time, frustration, emotional distress,
mental anguish, fear of personal safety and
security, and for punitive damages, attorneys'
fees, and court costs, and other assessments
proper by law and any and all other applicable
federal and state laws, together with legal
interest thereon from date of judicial demand
until paid; and

2) That this Honorable Court order all consumer
reporting agencies-defendants and users of
information and subscribers which supply
information to such agencies, made defendants
herein, to reinvestigate and correct the credit
report(s) and credit history of Plaintiff.

FURTHER, Prays that this Honorable Court order defendants,
separately, in the attached discovery Orders, to produce certain
documents and information to Plaintiff's counsel within thirty
[30] days of receipt of service of process.

FURTHER, Prays for all such additional, general and
equitable relief as may be necessary and proper in the premises.

Respectfully submitted:

*BODENHEIMER, JONES & SZWAK*

By: _____
DAVID A. SZWAK, LBR#21157
JOHN BRAD SMITHERMAN
610 Marshall St., Ste. 905
Shreveport, Louisiana  71101
(318) 424-1400
FAX   424-1476
*ATTORNEYS FOR PLAINTIFF*

PLEASE SERVE:
*EQUIFAX CREDIT INFORMATION SERVICES, INC.,*
through its agent for service of process:
*The Prentice-Hall Corporation Systems, Inc.
203 Carondelet Street, Ste. 811
New Orleans, Louisiana 70130;*

79

58150-79

*CSC CREDIT SERVICES, INC.,*
through its agent for service of process:
*CT Corporation Systems*
*8550 United Plaza Blvd.*
*Baton Rouge, Louisiana 70809;*

*EXPERIAN INFORMATION SOLUTIONS, INC.,*
through its agent for service of process:
*CT Corporation Systems*
*8550 United Plaza Blvd.*
*Baton Rouge, Louisiana 70809;*

*SPECIALTY RETAILERS,*
through its agent for service of process:
*CT Corporation Systems*
*8550 United Plaza Blvd.*
*Baton Rouge, Louisiana 70809;*

*STAGE STORES, INC. D/B/A STAGE DEPARTMENT STORES,*
please issue a Long-Arm citation and certified petition to
plaintiff's counsel for service to defendant:
10201 Main Street ·
Houston, Texas  77025;

*MERCURY FINANCE COMPANY A/K/A MERCURY FINANCE COMPANY OF*
*LOUISIANA,*
through its agent for service of process:
*CT Corporation Systems*
*8550 United Plaza Blvd.*
*Baton Rouge, Louisiana 70809;*

*LANE BRYANT,*
through its agent for service of process:
*CT Corporation Systems*
*8550 United Plaza Blvd.*
*Baton Rouge, Louisiana 70809;*

*WORLD FINANCIAL NETWORK NATIONAL BANK,*
please issue a Long-Arm citation and certified petition to
plaintiff's counsel for service to defendant:
3340 Peachtree Rd. NE #2620
Atlanta, Georgia  30326;

*NATIONSBANK, N.A. A/K/A NCNB CORP.,*
please issue a Long-Arm citation and certified petition to
plaintiff's counsel for service to defendant:
NCNB Corp.
One NCNB Plaza
Charlotte, North Carolina  28255;

*HEILIG-MEYERS COMPANY,*
through its agent for service of process:
*Prentice-Hall Corporation Systems*
*701 South Peters St., 2d Floor*
*New Orleans, Louisiana 70130;*

*BELLSOUTH MOBILITY, INC.,*
via President/CEO/Supervising Manager
8843 Veterans Memorial Blvd.
Metairie, Louisiana 70003;

*JEWELERS NATIONAL BANK A/K/A JEWELERS FINANCIAL SERVICE, A*
*DIVISION OF ZALES,*
please issue a Long-Arm citation and certified petition to
plaintiff's counsel for service to defendant:
5585 Rio Vista Dr.,
Clearwater, Florida 33760, and/or
2035 West 4th Street
Tempe, Arizona  85281;

58150-80

*GORDON'S JEWELERS,*
via President/CEO/Supervising Manager
2950 East Texas Street
Bossier City, Louisiana;

*THE CATO CORPORATION,*
via President/CEO/Supervising Manager
1102 East Admiral Doyle, Ste. 20
New Iberia, Louisiana 70560;

*CRESCENT BANK & TRUST A/K/A CITY BANK & TRUST,*
via President/CEO/Supervising Manager
225 Baronne Street
New Orleans, Louisiana;

*RITE AID PHARMACY F/K/A KATZ & BESTHOFF, INC. A/K/A K&B, INC.,*
via President/CEO/Supervising Manager
7060 Veterans Memorial Blvd.
Metairie, Louisiana 70003;

*HONOR CREDITORS AGENCY,*
please issue a Long-Arm citation and certified petition to
plaintiff's counsel for service to defendant:
17311 Dallas Parkway #300,
Dallas, Texas   75248;

*LOUISIANA BELLSOUTH,*
through its agent for service of process:
*CT Corporation Systems*
*8550 United Plaza Blvd.*
*Baton Rouge, Louisiana 70809;*

*LACK'S NO. 40, INC. A/K/A LACK'S STORES, INC.,*
through its agent for service of process:
*Adams*
*4700 Gentilly*
*New Orleans, Louisiana;*

*CREDIT BUREAU OF MONTGOMERY F/K/A HOLLOWAY CREDIT BUREAU A/K/A*
*CREDIT BUREAU COLLECTION DEPARTMENT,*
please issue a Long-Arm citation and certified petition to
plaintiff's counsel for service to defendant:
1286 Carmichael,
Montgomery, Alabama   39106;

*CAPITAL ONE BANK,*
please issue a Long-Arm citation and certified petition to
plaintiff's counsel for service to defendant:
2980 Fairview Park Dr., #1300,
Falls Church, Virginia   22042.

ANGELA N. BOYETT

Versus

EQUIFAX CREDIT INFORMATION
SERVICES, INC., CSC CREDIT
SERVICES, INC., EXPERIAN
INFORMATION SOLUTIONS, INC.,
SPECIALTY RETAILERS, STAGE
STORES, INC. D/B/A STAGE
DEPARTMENT STORES, MERCURY
FINANCE COMPANY A/K/A MERCURY
FINANCE COMPANY OF LOUISIANA,
LANE BRYANT, WORLD FINANCIAL
NETWORK NATIONAL BANK,
NATIONSBANK, N.A., A/K/A
NCNB CORP., HEILIG-MEYERS
COMPANY, BELLSOUTH MOBILITY,
INC., JEWELERS NATIONAL BANK
A/K/A JEWELERS FINANCIAL
SERVICE, A DIVISION OF ZALES,
GORDON'S JEWELERS, THE CATO
CORPORATION, CRESCENT BANK
& TRUST A/K/A CITY BANK &
TRUST, RITE AID PHARMACY
F/K/A KATZ & BESTHOFF, INC.
A/K/A K&B, INC., HONOR
CREDITORS AGENCY, LOUISIANA
BELLSOUTH, LACK'S NO. 40, INC.
A/K/A LACK'S STORES, INC.,
CREDIT BUREAU OF MONTGOMERY
A/K/A HOLLOWAY CREDIT BUREAU
A/K/A CREDIT BUREAU COLLECTION
DEPARTMENT, and CAPITAL ONE
BANK

NUMBER:

26TH JUDICIAL DISTRICT COURT

WEBSTER PARISH, LOUISIANA

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
F I L E D

MAR 0 1 1999

ROBERT H. SHEMWELL, CLERK
BY_____
DEPUTY

# CV99-0361 S

## JUDGE STAGG

## MAGISTRATE JUDGE PAYNE

*JURY DEMANDED*

### O R D E R

CONSIDERING PLAINTIFF'S REQUEST FOR A DISCOVERY ORDER:

IT IS HEREBY ORDERED THAT Defendants, EQUIFAX CREDIT

INFORMATION SERVICES, INC., CSC CREDIT SERVICES, INC., EXPERIAN

INFORMATION SOLUTIONS, INC., SPECIALTY RETAILERS, STAGE STORES,

INC. D/B/A STAGE DEPARTMENT STORES, MERCURY FINANCE COMPANY A/K/A

MERCURY FINANCE COMPANY, LANE BRYANT, WORLD FINANCIAL NETWORK

NATIONAL BANK, NATIONSBANK, N.A. A/K/A NCNB CORP., HEILIG-MEYERS

COMPANY, BELLSOUTH MOBILITY, INC., JEWELERS NATIONAL BANK A/K/A

JEWELERS FINANCIAL SERVICE, A DIVISION OF ZALES, GORDON'S

JEWELERS, THE CATO CORPORATION, CRESCENT BANK & TRUST A/K/A CITY

BANK & TRUST, RITE AID PHARMACY F/K/A KATZ & BESTHOFF, INC. A/K/A

K&B, INC., HONOR CREDITORS AGENCY, LOUISIANA BELLSOUTH, LACK'S

NO. 40, INC. A/K/A LACK'S STORES, INC., CREDIT BUREAU OF

MONTGOMERY F/K/A HOLLOWAY CREDIT BUREAU A/K/A CREDIT BUREAU

COLLECTION DEPARTMENT, and CAPITAL ONE BANK, produce and file

into the record of these proceedings, within thirty [30] days

2

58150-82

from the receipt of this Order in these proceedings, and provide a copy to plaintiff's counsel of record by mail, a true and correct copy of the documents listed in Exhibit "A," attached to this Order.

    Webster Parish, Louisiana, this the ⎯5⎯ day of

February⎯⎯⎯⎯⎯ , 1999.

                                 J U D G E

5X150-83

## EXHIBIT "A"

Page 1 of 3

1.   Please produce a copy of your documents involving communication(s) or contact(s) between you and your co-defendants, which reference Plaintiff, or any of his personal identifiers, or any allegations or defenses asserted in this action.

2.   Please produce any and all policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures in the investigation or reinvestigation of credit data.

3.   Please produce any and all policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures in the investigation or reinvestigation of credit data which is disputed as inaccurate due to credit card fraud or other criminal activity.

4.   Please produce any and all policy manuals, procedure manuals, or documents, which address your policies, practices or procedures in supplying MOP codes and other Metro Tape data.

5.   Please produce any and all policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures in insuring the accuracy of data maintained or disseminated by you.

6.   Please produce any and all policy manuals, procedure manuals, or other documents, which are consumer relations manuals for your employees and/or consumer credit database system.

7.   Please produce any and all of your data file maintenance manuals and on-line data entry manuals.

8.   Please produce copies of your annual reports to shareholders for each of the preceding four (4) years.

9.   Please produce copies of your quarterly profit and loss statements for each of the preceding twenty-four (24) quarters.

10.  Please produce your net worth statement.

11.  Please produce any and all of your system work flow manual(s) describing the contents and portions of your overall computerized database system.

12.  Please produce any and all documents discussing the Metro Tape Format.

13.  Please produce any and all policy manuals, procedure manuals, or other documents, which addresses the minimal amount and type of information required of any consumer disputing any item of information on a consumer report, in order to cause you to initiate your correction, update, modification and/or deletion of credit data.

14.  Please produce any and all policy manuals, procedure manuals, or other documents, which addresses instructions or directions, provided by your company to any subscriber, with regard to the means, methods and guidelines for communicating corrections of credit data to you.

15.  Please produce any and all policy manuals, procedure manuals, or other documents, which addresses instructions or directions, provided by your company to anyone with regard to point of sale procedures for extending credit, accepting your credit cards and handling your credit transactions.

1

58150-84

16.  Please produce any and all copies of any and all credit reports generated and/or issued by you concerning Plaintiff or which bear any of the personal identifiers of Plaintiff.  This request includes all frozen data reports, archived reports, current, on-line reports and the current state of the credit data of Plaintiff and/or which bear any of the personal identifiers of Plaintiff and/or which bear any personal identifiers which are the same or similar to those of Plaintiff and/or bearing any personal identifiers which would cause you to attach his/her/their data to Plaintiff's consumer report.  In connection therewith, please identify the recipient(s) of each document.

17.  Please provide a complete audit trail of any document(s), computer(s), or other data held by you which, in any degree, address or discuss Plaintiff, any of his personal identifiers and/or any of the data identified, as false, by Plaintiff in this action.  This request includes, but is not limited to any document(s), computer(s), or other data held by you which, in any degree, bears any personal identifiers which would cause you to attach such data to Plaintiff's consumer report.

18.  Please provide copies of your subscriber contracts, billing statements, invoices and other documents transferred between you and your co-defendants.

19.  Please produce any and all policy manuals, procedure manuals, or other documents, which address the particular architecture of your frozen data report system, credit data archival system or other system which electronically captures the state of a consumer's record(s) at a given point in time.

20.  Please produce copies of any and all consumer dispute verification(s) documents [CDV's/ACDV's] or Universal Data Forms [UDF's] you sent to any person or which you received from any person, which in any way references plaintiff, any of his personal identifiers, any other co-defendant, or any allegation or defense asserted in this action.

21.  Please produce copies of any and all documents bearing Beacon, Empirica, or FICO or other credit scoring assessments in connection with any report or data bearing Plaintiff's name or any of his personal identifiers.

22.  Please produce copies of any and all telephone reinvestigation forms and/or message books which in any way references Plaintiff or any allegation or defense asserted in this action.

23.  Please produce copies of any and all documents which contain any data about internal, self audits or external audits of the accuracy of credit data you maintain and disseminate, in the years: 1995, 1996, 1997, 1998.

24.  Please produce all documents involving or constituting communications between you and Plaintiff[s] [or their attorneys].

25.  Please produce your policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures in reporting data to any consumer reporting agency, during each of the years: 1995, 1996, 1997, 1998.

26.  Please produce your policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures for altering previously reported data to any consumer reporting agency, during each of the years: 1995, 1996, 1997, 1998.

27.  Please produce all application(s) which bear any identifier(s) associated with Plaintiff[s] and/or related to any and all account[s].

28.  Please produce all of your documents evidencing, constituting or including data concerning your first notification of any allegation that any account bearing any of Plaintiffs' personal identifiers had been used by a person not authorized to use it.

29.  Please provide a copy of your entire credit  file(s), collection file(s) and fraud investigation file(s), which in any way references Plaintiff, any of Plaintiff's personal identifiers or any of the account numbers.

30.  Please produce copies of all documents which discuss your total fraud losses connected to your credit card operations, in any or all of the following years: 1995, 1996, 1997, 1998.

31.  Please produce any and all sales receipts for any charge made on any of the account number related to the fraud balance described in this lawsuit.

32.  Please produce your documents which contain information concerning any security assessment, audit, report or study of your credit card operations, including point of sale security and collections, and/or your credit data reporting system(s) in each of the following years: 1995, 1996, 1997, 1998.

33.  Please produce copies of any and all documents which contain information about your specific allocation, in percentages and/or dollar amounts of your resources to reinvestigation of disputed credit card account billings, in the years: 1995, 1996, 1997, 1998.

58150 - 86

# EXEMPLIFICATION CERTIFICATE

I, **WINIFRED B. BRINKLEY**, Clerk of Court, 26th Judicial District, Webster Parish, Louisiana, do hereby certify that the foregoing documents consisting of **38** pages, to which this certificate is attached are full, true and correct copies of the originals on file and of record in my office. All of which we have caused by these presents to be exemplified, and the seal of our District Court to be hereunto affixed.

IN WITNESS WHEREOF, I have hereto set my hand and affixed the Seal of the said Court,

this **26TH** day of **FEBRUARY**, 19 **99**

Clerk of the 26th Judicial District Court

I, **BRUCE M. BOLIN**, Judge of the 26th Judicial District Court of the State of Louisiana, in and for the Parish of Webster, do hereby certify that **WINIFRED B. BRINKLEY**, whose name is subscribed to the preceding exemplification, is the clerk of the said District Court of the State of Louisiana, in and for the Parish of Webster, and that full faith and credit are due to his official acts. I further certify, that the seal affixed to the exemplification is the seal of our said District Court, and that the attestation thereof is in due form and according to the form of attestation used in this State.

Dated **FEBRUARY   26**, 19 **99**

Judge of the 26th Judicial District Court